**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO.   7:20-CV-034 |
| | § | |
| 44.697 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FORTCO PROPERTIES, LTD., | § § § § § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT FORTCO PROPERTIES, LTD.'S RESPONSE IN
OPPOSITION TO UNITED STATES OF AMERICA'S MOTION
FOR ORDER OF IMMEDIATE POSSESSION (DKT. # 8)**

Defendant FORTCO PROPERTIES, LTD., hereinafter referred to as "Defendant," responds to the United States of America's Motion for Order of Immediate Possession (Dkt. #8) and would respectfully show the Court as follows:

1. This is a statutory condemnation proceeding by which the United States of America (the "Government") seeks to acquire real property in fee simple from Defendant for construction of a pedestrian border barrier. The Government has filed a Complaint in Condemnation (Dkt. #1) and a Declaration of Taking (Dkt. #2). The Government has also deposited its estimate of just compensation (Dkt. #7). Although the Government has initiated the condemnation process by making these filings, the Government's request for immediate possession of the subject property is premature and should be denied, or at least abated, for the following reasons:

- ✓ The Government has not satisfied the bona fide negotiation requirements in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 8 U.S.C. § 1103(b)(3) (the "IIRIRA"); and

- ✓ Until very recently the Government has failed to identify how Defendant will access their remainder property, where utility sleeves will be located, and how drainage from its facilities can be accomodated.

2. These issues are also addressed in part in Defendant's Motion to Dismiss and For More Definite Statement, and Subject Thereto, Original Answer, Affirmative Defenses, and Jury Demand (Dkt. #11), which is incorporated by reference as if restated herein.

## A. Failure to make a bona fide effort to negotiate.

3. Under the IIRIRA, the authority for the Attorney General's acquisition of land for the border fence is explicitly set out in 8 U.S.C. §1103(b) (2)-(3), which provides in pertinent part:

> (2) The Attorney General may contract for or buy any interest in land ... as soon as the lawful owner of that interest fixes a price for it and the Attorney General considers that price to be reasonable.
>
> (3) When the Attorney General and the lawful owner of an interest ... are unable to agree upon a reasonable price, the Attorney General may commence condemnation proceedings pursuant to the Act of August 1, 1888 (Chapter 728; 25 Stat.357).

4. As this Court has previously confirmed, the IIRIRA requires the Government to engage in bona fide negotiations with landowners for the purchase of their property prior to initiating eminent domain proceedings. *United States v. 1.04 Acres of Land*, 538 F. Supp.2d 995, 1009–1010 (S.D. Tex. 2008). This Court has previously found that the IIRIRA manifested a clear Congressional intent that there be a certain level of negotiation between the government and landowner prior to institution of eminent domain proceedings. *Id.* at 1010. The negotiation must be bona fide. *Id.*; *United States v. County of Cascade*, 163 F. Supp. 518, 524 (D. Mont. 1958) (citing *Wilson v. Union Elec. Light & Power Co.*, 59 F.2d 580, 581 (8th Cir. 1932)).

5. "Bona fide effort to negotiate" has been construed to mean "reasonable negotiation with a minimal notion of good faith." *Thornton Dev. Auth. v. Upah*, 640 F. Supp. 1071, 1075 (D. Colo. 1986). Such negotiations need to proceed far enough to indicate that an agreement is

impossible. *United States v. County of Cascade*, 163 F. Supp. 518, 524 (D. Mont. 1958) (quoting 29A C.J.S. Eminent Domain § 224). In a case involving a similar statute as the one at bar, good faith negotiations were found to have occurred where the condemning entity had made reasonable efforts to ascertain local land values, initiated negotiations with all property owners to be paid compensation, made reasonable monetary offers, and continued negotiations for approximately five months, all before suit was filed. *U.S.G. Pipeline Co. v. 1.73 Acres of Land*, 1 F. Supp.2d 816, 824–25 (E.D. Tenn. 1998). Likewise, in *Thornton*, the court found that the condemning entity had engaged in bona fide negotiations where the parties had engaged in extensive discussions including several offers and counteroffers to purchase the property in question. 640 F. Supp. at 1075. Further, in *Kerr v. Raney*, 305 F. Supp. 1152, 1156 (W.D. Ark 1969), the court found that a mere perfunctory effort on the part of the condemning entity did not satisfy the requirement of engaging in bona fide negotiations. Finally, this Court in *United States v. 1.04 Acres of Land*, 538 F.Supp.2d 995 (S.D. Tex. 2008) ruled that in the absence of evidence that the government had complied with the bona fide negotiation requirements of the IIRIRA, it had authority to enter appropriate orders in response to the government's failure. *Id*. at 1011–12.

6. Prior to filing these actions, there were significant discussions regarding the impact the Government's acquisition would have to Defendant's property, but very little was actually memorialized in writing by the Government.

7. On March 3, 2020, prior to an initial status conference on March 4, 2020, the Government provided counsel for Defendant with an exhibit that shows the planned location for gates, subject to minor variations that may be necessary during construction. These gate locations have not been incorporated into the Government's pleadings or schedules but if the Court were to

hold the Government to these access locations the Defendant concedes that the access issues identified in the preceding paragraphs would likely be resolved.[1]

8.  The same exhibit provided by the Government on March 3, 2020 shows the planned locations for utility sleeves, subject to minor variations that may be necessary during construction. These utility sleeve locations have not been incorporated into the Government's pleadings or schedules but if the Court were to hold the Government to these utility sleeve locations the Defendant concedes that the utility sleeve issues identified in the preceding paragraphs would likely be resolved.

9.  If the Government is not held to the gate and utility sleeve locations identified in its recently produced exhibit, this means there is no formal, legal access to the remainder property or access to utilities until such time as the Government decides to amend its pleadings and schedules to identify and describe specific locations.

10. Similarly, the Government has recently indicated that it has not studied or planned to accommodate drainage or runoff from the part acquired which means the Defendant must be prepared to accommodate and divert any drainage or runoff from the Government's border barrier facilities.  This issue could potentially be cured by the Defendant at the Government's expense, however the Defendant must know the precise location of the Government's border barrier facilities, elevations, slopes, etc. in order to determinate what drainage mitigation will be required. Up until two days ago, however, the Government, has declined to provide any detailed engineering drawings or schematics to Defendant for evaluation and mitigation of these issues.

---

[1] The landowners are reviewing the recently provided exhibits and will inform the Government and the Court if any of the identified access or utility sleeve locations appear inconsistent with the parties' prior discussions.

11. The Defendant is now reviewing the drainage plans recently provided and hopes to be in a position to report to the Court on the sufficiency of the information provided at the next status conference.

**B.    Failure to provide adequate access and utilities to Defendant's remainder property.**

12. Schedule E to the Government's Complaint in Condemnation (Dkt. #1-1 at Sch. E) describes the real property being acquired by the Government. The acquisition bisects the Defendant's property and thus requires a mechanism for the Defendant to access its remainder property and for access to utilities, but the Government's description of the real property being acquired provides scant details about how the Defendant is to access their remainder property, stating only:

> Reserving to the owners of the lands . . . reasonable access to and from the owners' lands lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled "Beginning" and easternmost mark labeled "Ending" depicted on the map below.

*See id.*

13. The referenced "map below" does not indicate any opening(s), gate(s), or utility sleeve(s) in the border barrier and the Government's vague reference in passing to "reasonable access" through unspecified "opening(s) or gate(s)" fails to provide any definite or specific legal access to the remainder property. The Government thus failed to provide specific and reliable information about how access to the remainder property or access to utilities will provided, which is critical to the continued operation of Defendant's sophisticated agricultural operations.

14. As indicated above, on March 3, 2020, the Government provided counsel for Defendant with an exhibit that shows the planned location for gates and utility sleeves, subject to minor variations that may be necessary during construction. These gate and utility sleeve locations have not been incorporated into the Government's pleadings or schedules but if the Court were to

hold the Government to these access locations the Defendant concedes that the access and utility sleeve issues identified in the preceding paragraphs would likely be resolved.

## CONCLUSION

15. The Government's motion for immediate possession is premature because the Government has failed to provide critically important information, including information on how Defendant will access the remainder property, how Defendant will access utilities, and how drainage and runoff from the Government's border barrier will be mitigated. As such, the Government necessarily could not have complied with the bona fide negotiation process as required in the IIRIRA. For these reasons, Defendant requests that the Government's Motion for Order of Immediate Possession be denied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiff's Motion for Immediate Possession (Dkt. #8) be denied and that they be granted such other and further relief to which it may show itself to be justly entitled.

    Respectfully submitted,

    BARRON, ADLER, CLOUGH & ODDO, L.L.P.
    808 Nueces Street
    Austin, Texas 78701
    Ph:  (512) 478-4995
    Fax:  (512) 478-6022

    By:    */s/ Roy R. Brandys*
          Roy R. Brandys
          Attorney-in-Charge
          Texas Bar Number 02883550
          Southern District of Texas No. 31963
          brandys@barronadler.com
          Nicholas P. Laurent
          Texas Bar Number 24065591
          Southern District of Texas No. 1090833
          laurent@barronadler.com

ATTORNEYS FOR DEFENDANT,<br>FORTCO PROPERTIES, LTD.

CERTIFICATE OF SERVICE

I, Roy R. Brandys, Attorney for Defendant Fortco Properties, Ltd., hereby certifies that on March 5, 2020, I electronically filed the foregoing using the Court's CM/ECF system which will send service notification to all counsel of record.

By:    */s/ Roy R. Brandys*
         Roy R. Brandys