IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO.   7:20-CV-034 |
| 44.697 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FORTCO PROPERTIES, LTD., | § § § § § § § | |
| *Defendants.* | § § | |

**DEFENDANT FORTCO PROPERTIES, LTD.'S MOTION FOR
PRELIMINARY INJUNCTION OR OTHER INJUNCTIVE
RELIEF TO RESTORE INTEGRITY OF FLOOD LEVEE
AND TO SAFEGUARD ABANDONED CONSTRUCTION SITE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FORTCO PROPERTIES, LTD., Defendant herein, which makes and files this, its Motion for Preliminary Injunction or Other Injunctive Relief to Restore Integrity of Flood Levee and to Safeguard Abandoned Construction Site, and in support thereof would respectfully show the Court as follows:

**Background**

The United States commenced this case on February 4, 2020, by filing a Declaration of Taking, which sought to acquire fee simple interest in property identified as RGV-SL-4000.[1] On February 14, 2020, the United States deposited $438,673.00 in the registry of the Court as estimated just compensation.[2] Upon deposit of the estimated just compensation, title to the tract identified as RGV-WSL-4000 vested in the name of the United States by operation of law.[3]

---

[1] Dkt. No. 2.
[2] Dkt. No. 7.
[3] Upon the filing of the Declaration of Taking and depositing the estimated compensation in the Registry of the Court, the following events occur by operation of law: "1 title to the estate or interest specified in the declaration

The acquisition in this case is a partial acquisition, meaning the Defendant owns the property that immediately adjoins both the north and south side of the acquisition area. Exhibit A, Declaration of Marcus Forthuber.

On January 20, 2021, President Joseph R. Biden executed a Presidential Proclamation, terminating the national emergency at the Southern Border Wall and directing "a careful review of all resources appropriated or redirected to construct a southern border wall" through the development of "a plan for the redirection of funds concerning the southern border wall."[4] One exception to the stay in construction was for "*urgent measures needed to avert immediate physical dangers.*"[5]

Following issuance of the Presidential Proclamation, the Court granted the Joint Motion of the parties to stay these condemnation proceedings awaiting direction regarding the project from the Government.[6]

Before the Presidential Proclamation was issued, the Government began work on the border barrier on the Fortco property. Exhibit A, Declaration of Marcus Forthuber. To date, this work has included removal of a substantial portion of the existing flood levee and installation of the border wall's concrete base with bollards on top. *Id.* The concrete bases, however, have only been constructed in segments and do not run continuously along the flood levee. *Id.* Indeed, there are holes between the wall segments and large gaps both in the concrete bases and between the concrete and the remains of the earthen levee, leaving the altered and weakened flood levee

---

vests in the Government; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation." 40 U.S.C. § 3114(b); *see E. Tennessee Nat. Gas. Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004) (stating in a Declaration of Taking Act case, "[t]itle and the right to possession vest in the government immediately upon the filing of a declaration and the requisite deposit.").

[4] Pres. Proc. No. 10142, 86 Fed. Reg. 7225 (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-termination-of-emergency-with-respect-to-southern-border-of-united-states-and-redirection-of-funds-diverted-to-border-wall-construction/.
[5] *Id.* (emphasis added).
[6] Dkt. No. 44 & 51.

exposed to flood waters from the Rio Grande River during severe storm events. *Id.* The situation created by the Plaintiff's incomplete construction of the border wall and abandonment of operations as described herein has left Defendant's adjoining property vulnerable to severe weather events, including hurricanes similar to what the area has experienced in the recent past.[7] The devastating impact of such an event at a time when the flood levee has been left practically and functionally destroyed would be irreparable.

Defendant has observed that the Plaintiff's contractors have now removed equipment from the construction area and for all intents and purposes have effectively abandoned the project. *Id.*

Plaintiff's abandonment of the project in the midst of construction has created a dangerous and unsafe condition to Defendant's property immediately adjacent to the acquisition area and to those individuals working on the Defendant's property. *Id.* The Plaintiff's abandoned construction site includes a significant amount of exposed re-bar and other unattended construction materials with only meager construction fencing in some areas and other areas which are completely unfenced without any safety measures in place. *Id.*

Further, the unprotected and abandoned worksite is unsafe for foot or vehicle traffic. *Id.* Defendant and its agents/employees are unable to drive or travel across the levee between the land Defendant owns north and south of the border wall construction site. *Id.* The roads and passageways previously used for this purpose are now blocked and impassable. *Id.* Similarly, the levee road previously used to travel to Defendant's property south of the levee is too narrow and treacherous to drive and certainly is not wide enough to support farm vehicles or equipment. *Id.*

---

[7] The undeniable purpose of the levee system is to prevent and contain flooding and the attendant loss of property and potentially life arising from severe weather events and river flooding. It is unquestioned that the Plaintiff's border wall construction work has negatively impacted the use, functionality and utility of the levee on the Defendant's property and presents a clear and present danger to Defendant's land and those working on the property.

True and correct photographs of the condition of Plaintiff's project on the property immediately adjacent to the Defendant's property are attached to the Declaration of Marcus Forthuber as Exhibits A-1 to A-8. *Id.*

Hidalgo County officials have expressed serious concerns about the integrity of the flood levees.[8]  Hurricane season begins on June 1 and the National Oceanic and Atmospheric Administration predicts more storms than normal during the 2021 hurricane season.[9]  The general area around Defendant's property has been impacted by hurricane flood waters as recently as last summer.[10]

The Department of Homeland Security recently issued a statement in which it announced "initial steps to protect border communities from physical dangers resulting from the previous administration's approach to border wall construction."[11]  The statement goes on to provide:

> Repair the Rio Grande Valley's Flood Barrier System: Construction under the prior administration blew large holes into the Rio Grande Valley's flood barrier system to make way for a border wall. The flood barrier system had long provided low-lying regions of Hidalgo County, Texas, protection from catastrophic flooding, and these breaches have threatened local communities. DHS will start work to quickly repair the flood barrier system to protect border communities. This work will not involve expanding the border barrier.[12]

Thus, Plaintiff concedes that its work on the project adjacent to Defendant's property and elsewhere has "threatened local communities" and that Plaintiff will "start work to quickly repair the flood barrier." Counterintuitively, though, in a status conference on May 3 counsel for Plaintiff appeared resistant to an order from the Court ordering Plaintiff to do what Plaintiff says

---

[8]  *See* https://www.startribune.com/south-texas-officials-worry-about-breaches-in-border-levees/600046009/.  The Court can take judicial notice of statements made by Hidalgo County officials. *See* FED. R. EVID. 201.
[9]  *See* https://www.noaa.gov/media-release/average-atlantic-hurricane-season-to-reflect-more-storms.  The Court can take judicial notice of National Oceanic and Atmospheric Administration press releases. *See* FED. R. EVID. 201.
[10]  *See* https://www.weather.gov/bro/2020event_hanna.  The Court can take judicial notice of National Weather Service press releases. *See* FED. R. EVID. 201.
[11]  *See*  https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction.  The statement of the Department of Homeland Security is an admission by a party opponent. *See* FED. R. EVID. 201.
[12] *Id.*

it intends to. Unfortunately, time is of the essence in this situation, and the Defendant cannot afford to wait indefinitely for the Plaintiff to safeguard and protect the community from the certain devastation that will occur in the event of a severe weather event impacts this area.

### Request for Preliminary Injunction

Federal Rule of Civil Procedure 65 permits the Court to issue a preliminary injunction. *See* FED. R. CIV. P. 65. The four elements a party must establish to secure a preliminary injunction are:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

Defendant requests that the Court issue an injunction requiring Plaintiff to cure the unsafe condition on the property impacting Defendant's property adjoining Plaintiff's acquisition area and restore the integrity of the flood levee that has been significantly altered, weakened, and abandoned. Defendant meets each of the foregoing elements as follows:

*(1) a substantial likelihood of success on the merits*

This is a condemnation proceeding and compensation to be paid to the Defendant is mandated by the United States Constitution, thus Defendant is likely to succeed on the merits. *See* U.S. CONST. amd. V. Repairing the altered and weakened flood levee would also fit within an exception to President Biden's Proclamation for "urgent measures needed to avert immediate physical dangers."[13]

*(2) a substantial threat of irreparable injury if the injunction is not issued*

---

[13] Pres. Proc. No. 10142, 86 Fed. Reg. 7225 (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-termination-of-emergency-with-respect-to-southern-border-of-united-states-and-redirection-of-funds-diverted-to-border-wall-construction/.

Plaintiff has acknowledged the flood levee that previously existed on Defendant's property before Plaintiff's acquisition and before Plaintiff "blew large holes into it . . . long provided low-lying regions of Hidalgo County, Texas, protection from catastrophic flooding."[14] Plaintiff has effectively conceded a substantial threat of irreparable injury if the flood levees are not restored, agreeing that the flood levee provides protection from "catastrophic flooding." Persons in the area of Plaintiff's project have suffered substantial bodily injury as a result of the condition of Plaintiff's now abandoned construction project and additional injuries can be reasonably expected if Plaintiff does not make its construction site safe.

> *(3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted*

There is effectively no harm that would result if the Plaintiff is obligated to restore the integrity of the flood levee, put the historical and unquestioned flood protections back in place, and make Plaintiff's now abandoned construction site safe. The threat of injury due to the unsafe condition of the construction site and the following issues caused by a damaged/incomplete levee are great. In essence, no harm will result from the Plaintiff doing what it acquired the property for in the first place.

> *(4) the grant of an injunction will not disserve the public interest*

There would be no disservice to the public interest if Plaintiff restores the flood levees and makes its construction site safe. To the contrary, the public interest will be served and indeed greatly enhanced if the Plaintiff restores the flood levees it previously "blew large holes into."

Although Defendant's request relief related to property now owned by Plaintiff, Defendant has an interest in the current state of construction of Plaintiff's project because

---

[14] *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction.

Defendant's property immediately adjoins both sides of the property Plaintiff has acquired through this suit. Indeed, Plaintiff's border wall bisects the Defendant's integrated farming operation that extends on both sides of the levee. Moreover, Defendant possesses what is effectively an access easement through Plaintiff's acquisition area created in favor of Defendant through the Plaintiff's pleadings.[15]

Defendant requests that Court set a bond in the nominal amount of $100.

### Additional Authorities

As expressed in the age-old principle of sic utere tuo ut alienum non laedas, all property owners have a general duty to not use their own property in a manner that injures the rights of others. *Orient Ins. Co. v. Daggs*, 172 U.S. 557, 566 (1899) ("'Sic utere tuo ut alienum non laedas,' is of universal and pervading obligation. It is a condition upon which all property is held.").

In addition to the foregoing, the Court has authority under the All Writs Act, codified at 28 U.S.C. § 1651, to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Here, the Court's ability to render appropriate final relief in the case is likely to be impaired if the flood levee is allowed to remain disintegrated, if the construction site is allowed to remain in its dangerous condition, and/or if Defendant is denied the access rights promised by Plaintiff.

Further, the Court has authority under 40. U.S.C. § 3114(d), which authorizes the Court, once a declaration of taking is filed, to "fix . . . terms on which" possession may be assumed by the petitioner, and to "make just and equitable orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges." Requiring the petitioner to maintain the

---

[15] *See* Estate Taken Schedule [Dkt. 2-1] ("Reserving to the owners of the lands . . . reasonable access to and from the owners' landed lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled 'Beginning' and easternmost mark labeled 'Ending' . . .").

integrity of the levee, keep the construction site safe, and provide the access promised by Plaintiff are all appropriate actions authorized by that Section. *See also* FED. R. CIV. P. 77.1(h)(1) ("In an action involving eminent domain under federal law, the court tries *all issues* . . . ." (emphasis added)).

WHEREFORE, PREMISES CONSIDERED, Defendant FORTCO PROPERTIES, LTD. prays that this Court grant its Motion for Preliminary or Other Injunction to Restore Integrity of Flood Levee and to Safeguard Abandoned Construction Site and for all other relief to which Defendant may show itself entitled.

Respectfully submitted,

BARRON, ADLER, CLOUGH & ODDO, L.L.P.
808 Nueces Street
Austin, Texas 78701
Phone: (512) 478-4995
Fax: (512) 478-6022

By:  */s/ Roy R. Brandys*
Roy R. Brandys
Attorney-in-Charge
Texas Bar Number 02883550
Southern District of Texas No. 31963
brandys@barronadler.com
Nicholas P. Laurent
Texas Bar Number 24065591
Southern District of Texas No. 1090833
laurent@barronadler.com

ATTORNEYS FOR DEFENDANTS,
FORTCO PROPERTIES, LTD. AND
KRENMUELLER FARMS

CERTIFICATE OF CONFERENCE

I certify that on May 4, 2021, I conferred with counsel for Plaintiff on the relief requested in this motion. Counsel for Plaintiff informed me that the Government has lifted its hold on the contractors in the area and planned to begin flood levee restoration work on "priority tracts" within three weeks. Counsel for Plaintiff believed the subject property is a priority tract but was unclear on when exactly work would be expected on the subject property. I asked if counsel for Plaintiff could reduce any of the foregoing to writing and counsel for Plaintiff indicated she would need to confer with the Government.

By:   */s/ Nicholas P. Laurent*
      Nicholas P. Laurent

CERTIFICATE OF SERVICE

I certify that on May 4, 2021, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record.

By:   */s/ Nicholas P. Laurent*
      Nicholas P. Laurent