**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO.   7:20-CV-034 |
| 44.697 ACRES OF LAND, MORE OR LESS, SITUATE IN HIDALGO COUNTY, STATE OF TEXAS; AND FORTCO PROPERTIES, LTD., | § § § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT FORTCO PROPERTIES, LTD.'S BRIEF
IN RESPONSE TO THE COURT'S MAY 4, 2021 ORDER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW FORTCO PROPERTIES, LTD., Defendant herein, which makes and files this, its Brief in Response to the Court's May 4, 2021 Order, and in support thereof would respectfully show the Court as follows:

By order dated May 4, 2021 [Dkt. # 58], the Court requested briefing on four specific questions. Many of the Court's questions relate to nuisance and whether a claim for nuisance must be plead before the Court can issue injunctive or other relief. Defendant answers the Court's questions below. However, Defendant believes the Court does not need to address the nuisance questions at this time because the Court has inherent authority, including under 42 U.S.C. § 3114, FED. R. CIV. P. 77.1(h)(1), and the All Writs Act, to address the issues raised by Defendant. Additionally, there is precedent in the United States District Court for the Southern District of Texas for the suspension of a prior order transferring possession to the Plaintiff.

*1.     Whether Plaintiff's actions have created a public or private nuisance, or both*

In federal condemnation proceedings, district courts frequently look to applicable state law. *See, e.g., U.S. v. 0.073 Acres of Land, more or less, situate in Pars. of Orleans & Jefferson, La.*, No. CIV.A. 09-3770, 2011 WL 5419725, at *1 (E.D. La. Nov. 9, 2011), *aff'd sub nom. U.S. v. 0.073 acres of land, more or less, situate in Pars. of Orleans & Jefferson, La.*, 705 F.3d 540 (5th Cir. 2013) ("The parties agree that federal procedural and substantive law controls in condemnation proceedings, and that courts may look to state law to determine whether a property interest is compensable under the United States Fifth Amendment Takings Clause."); *U.S. v. 194.08 Acres of Land, More or Less, Situated in St. Martin Par., State of La.*, 135 F.3d 1025, 1031 (5th Cir. 1998) ("We look to state law to determine what interests are sufficiently important to require joinder under Rule 71A. . ." (citing *Ga. Power Co. v. Sanders*, 617 F.2d 1112, 1116 (5th Cir. 1980) (en banc)).

Dean Prosser explains nuisance as follows:

> Nuisance, whether it be public or private, is thus a field of tort liability, a kind of damage done, rather than any particular type of conduct. As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause harm, by that which is merely negligent, or by that which involves an unusual hazard or risk, in line with the principle of Rylands v. Fletcher.

Prosser, *Nuisance Without Fault*, 20 TEX. L. REV. 399, 416–17 (1942). "The existence of a nuisance does not always depend upon the degree of danger or damage existing even with the best of care." *King v. Columbian Carbon Co.*, 152 F.2d 636, 639 (5th Cir. 1945). "Whether a nuisance exists is a question to be determined not merely by a consideration of the thing itself, but with respect to all attendant circumstances." *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (citing 66 C.J.S. Nuisances § 8 p. 742 (1950)).

"A private nuisance is a nontrespassory invasion of another's interest in the private use or enjoyment of land." *Lethu Inc. v. City of Houston*, 23 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

A "public" or "common nuisance" is a condition that amounts to an unreasonable interference with a right common to the general public. *See Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.). "A public nuisance 'affects the public at large' by 'adversely affect[ing] either the entire community, a public gathering place, or even a considerable portion of the citizenry.'" *Bolton v. Fisher*, 528 S.W.3d 770, 778 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Ortega v. Phan–Tran Prop. Mgmt., L.L.C.*, No. 01-15-00676-CV, 2016 WL 3221423, *2–3 (Tex. App.—Houston [1st Dist.] Jun. 9, 2016, pet. denied); *Walker v. Tex. Elec. Serv. Co.*, 499 S.W.2d 20, 27 (Tex. Civ. App.—Fort Worth 1973, no writ)).

In the present case, the Plaintiff's self-confessed act of "bl[owing] large holes" into the flood levee[1] and abandonment of its construction project sandwiched in the middle of Defendant's property, leaving the construction site in a dangerous condition, amounts to both a public and private nuisance, for different reasons.

The Plaintiff's acts create a private nuisance because the acts affect the Defendant's ability to freely access its remainder property. The Plaintiff's pleadings effectively reserve an access easement to Defendant so that Defendant may freely travel to and from its remainder

---

[1] *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction. The statement of the Department of Homeland Security is an admission by a party opponent. *See* FED. R. EVID. 201.

property located south of the Plaintiff's acquisition.[2] Defendant's Declaration of Marcus Forthuber [Dkt. # 57 at Exh. A] establishes that Plaintiff's acts in "bl[owing] large holes" into the flood levee and abandoning its construction site has created an unsafe situation which renders the construction site impassable. Thus, Plaintiff's conduct negatively affects Defendant's interest in, and access to, its remainder property as well as the general use and enjoyment of Defendant's land. *See generally Lethu Inc.*, 23 S.W.3d at 489; *Bily*, 731 S.W.2d at 611.

The Plaintiff's acts create a public nuisance because the public and Defendant have a right to enjoy the safety and protection afforded by the previously existing flood levees that Plaintiff "blew large holes" into. The danger created by Plaintiff's acts has caused an undeniable increased risk of catastrophic flooding,[3] both on Defendant's adjoining property and other properties in the immediate area, which is an actionable public nuisance. *See, e.g., Int'l & G.N. Ry. Co. v. Davis*, 29 S.W. 483, 483 (Tex. Civ. App. 1895, writ ref'd) ("We also find that the maintenance of the roadbed and culvert in its present condition at the time of trial will occasion future overflow and destruction of plaintiff's land, and that it will seriously affect the value and the use thereof, and that it is a nuisance, and that it can, by the exercise of reasonable diligence upon the part of appellant, be remedied, and so constructed as to, in the main, relieve the land from future overflows. . . . The railway, because it may owe a duty to the public in its quasi official character, in maintaining and operating its road, is not thereby granted a license to do a wrong, and continue it for time indefinite, to the adjacent owner. . . . The injury complained of was not only continuing, but was constantly increasing.").

---

[2] *See* Estate Taken Schedule [Dkt. 2-1] ("Reserving to the owners of the lands . . . reasonable access to and from the owners' landed lying between the Rio Grande River and the border barrier through opening(s) or gate(s) in the border barrier between the westernmost mark labeled 'Beginning' and easternmost mark labeled 'Ending' . . .").
[3] Plaintiff has conceded the previously existing flood levees "had long provided low-lying regions of Hidalgo County, Texas, protection from catastrophic flooding, and these breaches have threatened local communities." *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction.

*2.     Whether Defendants must assert a counterclaim against the government for creating a nuisance before the Court can grant injunctive relief on that basis*

The Supreme Court of the United States has long recognized that "a prospect of irremediable injury by what is apparently a nuisance, a temporary or preliminary injunction may at once issue." *Irwin v. Dixion*, 50 U.S. 10, 29 (1850). The Fifth Circuit has also recognized that injunctions are appropriate in nuisance matters. *See Cox v. City of Dallas, Tex.*, 256 F.3d 281, 291 (5th Cir. 2001) ("[t]wo basic remedies are available in nuisance actions—damages and injunctions.") (citing RESTATEMENT (SECOND) OF TORTS §§ 821B cmt. i; 821C; 821F; 822 cmt. d (providing that an "injunction may be obtained in a proper case against a threatened private nuisance, but an action cannot be maintained at law unless harm has already been suffered" and referencing § 821C for a similar distinction in the realm of public nuisances); Developments in the Law—Injunctions, 78 HARV. L. REV. 994, 1001 (1965) (explaining that injunctions are usually granted when damages are inadequate, such as with ongoing nuisances in which numerous suits or future damage awards would be required)).

Similarly, Texas courts have also recognized that acts which would cause the flooding of property are appropriate for injunctive relief. *See Pak-Mor Mfg. Co. v. Brown*, 364 S.W.2d 89, 95 (Tex. Civ. App.—San Antonio 1962, writ ref'd n.r.e.) ("'It is well settled that lower lying lands are subject to 'a service to receive the burden of surface waters which may flow from the higher estate onto the lower, so long as the surface water from the dominant estate reaches the borders of the servient one untouched and undirected by the hands of man.' . . . Had appellee attempted to interfere with the natural diffused flow of water onto his property, the dam would have undoubtedly constituted an illegal obstruction and a nuisance and subject to abatement by injunction proceeding.") (citing *Miller v. Letzerich*, 49 S.W.2d 404, 408 (Tex. 1932)).

Notwithstanding all of the foregoing, Defendant contends it is not necessary to assert a counterclaim for nuisance before the Court can grant the injunctive and other relief sought by Defendant. As discussed below, the Court has the power to issue injunctive relief consistent with its inherent and express authority, including under 42 U.S.C. § 3114, FED. R. CIV. P. 77.1(h)(1), and the All Writs Act, to address the issues raised by Defendant within the confines of this condemnation case.

   *3.  Whether any nuisance is prospective or present*

Texas courts recognize the distinction between a prospective and present nuisance, although they do not provide specific guidance on what makes a nuisance prospective or present. The Houston Court of Appeals has recognized that there is no cause of action for damages caused by a prospective nuisance, but recognize a court may use its equitable power to enjoin a prospective nuisance. *1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Under the facts in the instant case, the Plaintiff's nuisance is undeniably a present nuisance. Plaintiff has conceded it "blew large holes" into the flood levee,[4] which recognizes a past-tense act of damaging and altering the integrity of the previously existing flood levee. Plaintiff's act of damaging and altering the integrity of the previously existing flood levee has already created a present and current risk of "catastrophic flooding" that, according to Plaintiff, "threaten[s] local communities."[5] Plaintiff's acts have also created a present impediment to Defendant's access, as well as a present safety hazard due to the exposed re-bar along the construction site. *See* Defendant's Declaration of Marcus Forthuber [Dkt. # 57 at Exh. A].

---

[4] *See* https://www.dhs.gov/news/2021/04/30/dhs-announces-steps-protect-border-communities-wall-construction. The statement of the Department of Homeland Security is an admission by a party opponent. *See* FED. R. EVID. 201.
[5] *Id.*

Although the Plaintiff's conduct constitutes a present danger, which is likely also a nuisance, the Court has injunctive power to remedy the situation without reliance on an underlying tort claim.

*4.  Whether the Court may rely upon its "inherent" equitable power and jurisdiction over the parties and this action to grant the injunctive relief requested by Defendants.*

The United States Supreme Court has held "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."[6] *Degen v. U.S.*, 517 U.S. 820, 823 (1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962); *U.S. v. Hudson*, 11 U.S. 32, 7 Cranch 32 (1812)).  Related to this general authority vested with the courts, the Fifth Circuit has specifically held, for example, that the "All Writs Act provides that federal courts may 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).  Here, the Court may issue a writ of injunction to protect and preserve the numerous property interests at issue in this case to ensure that the Court is able award complete and adequate relief at the conclusion of the action.

In addition to the Court's inherent authority to protect its proceedings, this Court specifically has the authority to modify the order of possession it previously granted in favor of the Plaintiff.  *See U.S. v. 6,576.27 Acres, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246–48 (D.N.D. 1948) ("The Court is accordingly of the opinion that it does have the power to amend such order [of possession] in such manner as may provide justice to all parties and as

---

[6] Similarly, Texas appellate courts have recognized that "[a] court may exercise its equitable power to enjoin a prospective nuisance under certain circumstances." *1717 Bissonnet, LLC*, 500 S.W.3d at 497 (citing *Freedman*, 776 S.W.2d at 216)).  As the *Freedman* court noted, "a court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or structure will be a nuisance per se, or will be a nuisance for which there is no adequate remedy at law, or where a nuisance is imminent. . . . When an attempt is made to enjoin an anticipated nuisance, the threatened injury must not be merely probable but reasonably certain before a court will exercise its equitable power to restrain it" *Freedman*, 776 S.W.2d at 216) (citing 66 C.J.S. Nuisances § 8 p. 742, § 113 p. 881 (1950); *O'Daniel v. Libal*, 196 S.W.2d 211, 213 (Tex. Civ. App.—Waco 1946, no writ).

will not impede the Government in its prosecution of the [] project."). In this case, Plaintiff requested immediate possession of Defendant's property under 42 U.S.C. § 3114. Defendant opposed Plaintiff's motion, arguing there were too many unknowns related to Plaintiff's project. The Court ultimately granted Plaintiff's motion, but the grant of Plaintiff's motion did not end the Court's jurisdiction to continue to oversee the conveyance of possession to Plaintiff.

Under the Declaration of Taking Act, the Court "may fix the . . . the terms on which, the parties in possession shall be required to surrender possession to the petitioner." 42 U.S.C. § 3114(d)(1). Under this section, the Court has the explicit authority to fix the terms on which possession is transferred and maintains jurisdiction to control the orderly and safe transfer of possession. *See, e.g., U.S. Upon Rel. of Tenn. Valley Auth. v. Temp. Right to Enter Upon Land in Meigs Cty. Tenn.*, 397 F. Supp. 3d 1111, 1114–15 (E.D. Tenn. 2019) ("At least there is no indication in Mr. Vital's papers that there is any 'undue hardship' imposed upon him by virtue of TVA's exercise of its rights. *If and when such a hardship should arise, Mr. Vital may seek relief pursuant to 40 U.S.C.A. § 3114(d)*." (emphasis added)); *U.S. v. 6,576.27 Acres of Land, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246 (D. N.D.1948) (act affording court the power to fix time and terms of possession confers "duty on the part of this Court to see that such date for possession *and terms of possession are in accordance with the equities*" (emphasis added)).

In an order on Plaintiff's motion for possession under 42 U.S.C. § 3114 on another border wall matter several years ago pending in the United States District Court for the Southern District of Texas, Brownsville Division, Judge Hanen recognized the court's authority to address any subsequent disputes regarding the transfer of possession to the Plaintiff. *See* Civil Action No. B-08-169; *U.S. v. 1.16 Acres of Land, More or Less, Situated in Cameron County, State of Tex., et al.*; United States District Court for the Southern District of Texas, Brownsville Division [Dkt.

# 26] at 2 ("This court will make itself available, if needed, for the resolution of disputes, but it expects all parties to act cooperatively and with due concern for the rights and needs of the other parties in the implementation of this order."). Subsequent to the order, Judge Hanen suspended the court's order granting possession in favor of the Plaintiff [Transcript at Dkt. # 85], and the Plaintiff filed a renewed motion for possession. *See id.* [Dkt. # 91]. Judge Hanen eventually ordered possession be transferred to the Plaintiff, but in doing so recognized the court's authority to amend or suspend a previously entered order transferring possession. *See id.* [Dkt. # 118]

Finally, the Federal Rules of Civil Procedure specifically grant the Court the power to try "all issues" in a condemnation proceeding. *See* FED. R. CIV. P. 77.1(h)(1). This broad grant of authority to the Court empowers it to consider not only the ultimate compensation issue, but also any other ancillary matter like the safety and access interference issues raised by Defendant. *See id.*

The relief requested by Defendant is not trivial or inconsequential. Defendant requests that the Plaintiff merely do the right thing to fix an issue that it caused and that it has acknowledged poses a very real threat to nearby property owners and communities. Defendant asks that the Court order Plaintiff to restore the integrity of flood levees that have been in place for decades and which protect the lives and property of not just Defendant, but also the general public nearby. The relief requested by Defendant squarely relates to the preservation of life and property which is threatened by what Plaintiff concedes could be "catastrophic flooding," not to mention the safety issues at play at an abandoned construction site. Defendant also requests the Court order Plaintiff to provide Defendant safe and reasonable access to its property that adjoins the acquisition area consistent with Plaintiff's pleadings reserving access to the Defendant.

WHEREFORE, PREMISES CONSIDERED, Defendant FORTCO PROPERTIES, LTD. prays that this Court grant all relief to which Defendant may show itself entitled.

Respectfully submitted,

BARRON, ADLER, CLOUGH & ODDO, L.L.P.
808 Nueces Street
Austin, Texas 78701
Phone: (512) 478-4995
Fax: (512) 478-6022

By: */s/ Roy R. Brandys*
Roy R. Brandys
Attorney-in-Charge
Texas Bar Number 02883550
Southern District of Texas No. 31963
brandys@barronadler.com
Nicholas P. Laurent
Texas Bar Number 24065591
Southern District of Texas No. 1090833
laurent@barronadler.com

ATTORNEYS FOR DEFENDANTS,
FORTCO PROPERTIES, LTD. AND
KRENMUELLER FARMS

CERTIFICATE OF SERVICE

I certify that on May 5, 2021, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on counsel of record.

By: */s/ Nicholas P. Laurent*
Nicholas P. Laurent